UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| COACH, INC., et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )  Case No. 4:10CV2289 RWS |
| | ) |
| JACK FRISON, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Plaintiff Coach, Inc. filed this lawsuit against Defendants asserting claims under the Lanham Act, 5 U.S.C. § 1114 et seq., for trademark infringement, trade dress infringement, and counterfeiting. Coach also asserts various claims under Missouri state law and a copyright infringement claims under the United States Copyright Act, 17 U.S.C. § 501, et seq. Coach seeks summary judgment against Defendant Soukeye F. Samb for selling counterfeit Coach products at Defendant Frison Flea Market, Inc. Coach also seeks summary judgment against Jack Frison and the Flea Market for permitting the sales of counterfeit Coach products on their premises. Based on the undisputed facts in the record, I will grant Coach's motion.

*Background*

Plaintiff Coach is engaged in the manufacture, marketing and sale of fine leather and mixed material products including handbags, wallets, accessories, eyewear, footwear, jewelry, and watches. Coach sells these products through its own retail stores and website as well as through department stores and catalogs. Coach's products are protected by various trademarks, trade dresses, and design element/copyrights.

Defendant Jack Frison (Frison) is the owner / operator of Defendant Frison Flea Market

in St. Louis, Missouri.[1]  The Flea Market leases space to venders to sell their various wares.  Defendant Samb was a vender at the Flea Market.  Frison controlled who is allowed to rent space at the Flea Market and sets the prices of the rentals.  Frison has provided the vendors with rules which banned trademark infringement by vendors.  As the owner / operator of the Flea Market, Frison has the right to enforce his policy against counterfeiting and to remove vendors who sold counterfeit goods. [Doc. # 90, Pl.'s Statement of Uncontroverted Facts, ¶ 20]  Frison managed the Flea Market, was responsible for inspection of vendor operations, and controlled day to day operations of the Flea Market. [Id. at ¶ 18]  Frison had complete control over the Flea Market and provided the venue for the illegal conduct. [Id. at ¶ 19][2]  Frison earned a profit from renting spaces to vendors and by charging the public a fee to enter the Flea Market. [Id. at ¶ 21]  During the peak sales season, from October to December, 3,000 to 4,000 people visit the Flea Market each day. [Id. at ¶ 12]

It is undisputed that counterfeit goods were sold at the Flea Market everyday, frequently offered in plain view and sometimes kept out of sight. [Id. at ¶ 22][3]  On June 19, 2010, Coach

---

[1] I note that Frison invoked his Fifth Amendment right against self-incrimination throughout his entire deposition.

[2] In his response to summary judgment, Frison appears to challenge the assertions in ¶s 18 and 19.  A close inspection of these responses reveals that he did not disagree with the assertions, he simply provided additional information asserting that he "did not inspect the products at the booths" and the took "reasonable precautions to prevent the sale of counterfeit Coach items." [Doc. # 91, Def.'s Response to Summ. J. ¶s 1 and 2]

[3] Frison does not dispute this statement.  Coach's original statement of fact asserted that these goods were displayed in plain view.  Frison only disputed this aspect of the statement and says that the vendors hid the counterfeit items underneath their tables or in boxes. [Doc. # 91, Def.'s Response to Summ. J. ¶ 3]  However, the evidence Frison cites to in support of this position is the deposition of two Coach investigators.  They both testified that a lot of counterfeit Coach merchandise was being openly displayed for sale in their visits in the second half of 2010

sent Frison and the Flea Market a letter informing them that a Coach investigator observed counterfeit Coach merchandise openly being sold at the Flea Market on May 15, 2010 and June 4, 2010.  Coach warned Frison that the sale of counterfeit Coach goods must cease and that Coach would file an action against Frison if the illegal sales continued. [Id. at Ex. H]  Despite the clear notice provided by Coach to Frison regarding the ongoing sale of counterfeit Coach merchandise at the Flea Market, the sale of counterfeit Coach goods continued. [Id. at ¶ 31][4]  On September 12, 2010, a Coach investigator went to the Flea Market and purchased more counterfeit Coach merchandise which were openly displayed for sale.  [Id. at ¶ 31, Ex. I]  On March 12, 2011, a Coach investigator purchased two counterfeit Coach items that were openly displayed and a third item which was not openly displayed but was easily obtained by simply asking for the merchandise. [Id., Ex. K]  Coach investigators visited the Flea Market again on July 25, 2011, and purchased eleven more counterfeit Coach items.  [Id. at ¶ 35]   As recently as June 22, 2012, counterfeit Coach products were still being sold at the Flea Market.  [Id. at ¶ 51]

---

and less was in the open in the Spring of 2011 and, finally by July 2011, the counterfeit Coach merchandise was still being sold but was not openly displayed.  To purchase to Coach merchandise in July the investigators merely asked vendors if they had such merchandise and were shown goods kept in the vendors' booths out of open sight. [Id. Ex. 3 at 18 - 19 and Ex. 4 at 20 - 24] Another defendant in this matter is Hirsia Thirshe, a vendor at the Flea Market.  She testified at her deposition that lots of counterfeit goods were on display every day at the Flea Market.  [Doc. # 90, Pl.'s Statement of Uncontroverted Facts, ¶ 23] So Coach's assertion that goods were being sold in plain view is true as is Frison's assertion that the goods became hidden from view.

   [4] Frison does not deny this statement, but he asserts that he did not facilitate the sale of the counterfeit Coach goods. [Doc. # 91, Def.'s Response to Summ. J. ¶ 3]  However, the evidence Frison cites to in support of this position is the deposition of Defendant Thirshe.  Her testimony was that Frison never told the vendors not to sell counterfeit Coach goods until after this lawsuit was filed.  Then he held one meeting in which he told the vendors to remove Coach products from their tables. [Id., Ex. 5 at 49-53]

Frison and his employees patrolled the Flea Market everyday. [Id. at ¶ 36] Counterfeit goods, including counterfeit Coach merchandise, were openly displayed throughout the market. Frison and his employees saw these goods but did nothing to stop their sales. Finally, after this lawsuit was filed, Frison told the vendors to remove the Coach merchandise from their tables. Yet the sale of counterfeit Coach merchandise continued in the Flea Market either in the open or through minimal efforts by inquiring about Coach goods and having them quickly produced. [Id., Ex. D at 34-55] Frison never evicted a vendor from the Flea Market for selling counterfeit goods. After this lawsuit was filed Frison fined vendors for selling counterfeit Coach products, but he never removed a vendor from the Flea Market for such an infraction. [Id. at 113-115]

Coach brought this lawsuit against Frison, the Frison Flea Market, Samb, and others for violations of the Lahnam Act, the Copyright Act, and various state laws. I take judicial notice that, subsequent to this lawsuit being filed, Samb pleaded guilty in this Court to federal charges of importing and selling, at Frison Flea Market and other locations, counterfeit merchandise, including Coach purses. U.S.A. v. Soukeye Fox [Samb], 4:12 CR 241 AGF. I also take judicial notice that Frison has been indicted in a case before this Court for knowingly facilitating, aiding, and abetting a substantial number of vendors in the open sale of counterfeit goods, including counterfeit Coach merchandise, at the Frison Flea Market from at least 2004 through 2012. U.S.A. v. Jack Frison, 1:13 CR 231 RWS.

Coach has filed a motion for summary judgment against Samb, Frison, and the Frison Flea Market on its Lanham Act and Copyright Act claims. Although given ample opportunities, Samb has failed to file a response to this motion. Frison filed a response opposing the motion.

*Legal Standard*

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998)(citing Fed. R. Civ. P. 56(c)).  The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof.  Id. at 324.  In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

*Discussion*

In regard to trademark counterfeiting and infringement, the Lahnam Act states in relevant part:

> Any person who shall, without the consent of the registrant . . . use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1).  "The holder of a registered mark has a civil action against anyone

employing an imitation of it in commerce when 'such use is likely to cause confusion, or to cause mistake, or to deceive.'" KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 543 U.S. 111, 117 (2004)(quoting § 1114(1)(a). When the infringing products are near copies, the likelihood of confusion may be presumed. Solutech, Inc. v. Solutech Consulting Services, Inc., 153 F. Supp. 2d 1082, 1088 (E.D. Mo. 2000). The Lanham Act defines "counterfeits" as "a spurious mark which is identical with, or indistinguishable from, a registered mark." 15 U.S.C. § 1127.

     This lawsuit was filed on December 6, 2010. Coach has presented undisputed evidence from its investigators which establishes that counterfeit Coach merchandise was being sold openly at the Frison Flea Market by venders, including Samb, in the second half of 2010 and in the Spring of 2011. The undisputed evidence also shows that after this lawsuit was brought, on one occasion only, Frison told the vendors to remove the Coach merchandise. However, sales of the counterfeit Coach merchandise continued and were had for the asking, the difference is that by July 2011, the items were no longer openly displayed.

     Samb has admitted in her criminal case that she sold counterfeit Coach merchandise at the Frison Flea Market. That admission combined with the undisputed evidence in this civil case establishes that Coach is entitled to summary judgment in it claims against Samb.

     Frison asserts that Couch is not entitled to summary judgment against him and the Flea Market because he did not facilitate the sale of counterfeit Coach goods by his vendors. The undisputed evidence is that Frison controlled the operations of the Flea Market and had the power to evict vendors who sold counterfeit goods at the market. The sale of counterfeit Coach goods was open and notorious. Despite being informed by Coach of this illegal activity in June

2010, the illegal sale of counterfeit Coach merchandise continued openly, then slightly less openly, at the Flea Market.  Frison took no action to stop the sale of counterfeit Coach products until after this lawsuit was filed.  After that date, instead of evicting vendors caught selling counterfeit Coach merchandise, Frison charged them a fine which he kept.  It is undisputed that Frison reaped financial benefits by collecting fees, and later fines, from vendors who openly sold counterfeit goods.

The owner of a flea market may be liable for contributory trademark and copyright infringement.  Coach, Inc. v. Goodfellow, --- F.3d ---, 2013 WL 2364091 (6th Cir. May 31,2013)(flea market operator subject to contributory liability for vendor's trademark infringement through sale of counterfeit Coach merchandise in the market); Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 264 (1996)(finding a trademark and copyright infringement cause of action against a swap meet operator for permitting the routine sale of counterfeit goods).  Contributory liability may be imposed on the owner of a facility who turns a willful blind eye to ongoing trademark violations at the facility.  Id. at 265.

Based on the undisputed evidence in the record I find that Coach has established its claim against Frison and the Flea Market for contributory trademark infringement.  Frison willfully turned a blind eye to the sale of counterfeit Coach goods in his market and profited from those sales.

Coach also moves for summary judgment on its copyright infringement claim.  "To establish [a] claim for copyright infringement, [a plaintiff is] required to prove ownership of a valid copyright and copying of original elements. Copying may be established (1) by direct evidence or (2) by showing that the defendants had access to the copyrighted materials and

showing that substantial similarity of ideas and expression existed between the alleged infringing materials and the copyrighted materials." Rottlund Co. v. Pinnacle Corp., 452 F.3d 726, 731 (8th Cir. 2006)(internal quotations and citations omitted).  A person who, with knowledge of copyright infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a contributory infringer.  Fonovisa, Inc., 76 F.3d at 264. Providing services such as "the provision of space, utilities, parking, advertising, plumbing, and customers" materially contributes to the infringing activity of the vendors at a swap meet.  Id. An operator of an establishment may also be vicariously liable for copyright infringement if it "has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities."  Id. at 262 (internal quotation and citation omitted).

It is undisputed that the vendors selling counterfeit Coach merchandise violated Coach's copyrights on its merchandise.  Frison was aware of this activity and materially contributed to it by providing the vendors with space, utilities, parking, advertising, plumbing, and customers." He also had a direct financial interest in his vendors' infringing activities by charging them fees, collecting fines, and charging admission to customers who came to the Flea Market to buy the counterfeit, copyright protected, Coach merchandise.  As a result, I find that Coach is entitled to summary judgement on its copyright infringement claim against Frison and the Frison Flea Market.

Accordingly,

**IT IS HEREBY ORDERED that** Plaintiff Coach, Inc.'s motion for summary judgment on its trademark and copyright infringement claims against Defendants Soukeye Aamb, Jack Frison, and the Frison Flea Market [#88] is **GRANTED**.

**IT IS FURTHER ORDERED that** Defendants Frison Flea Market, Inc. and Jack Frison's motion to stay [# 92] is **DENIED**.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 18th day of July, 2013.